34 C.C.P.A. (Patents)

### Application of HAMPEL.
### Patent Appeal No. 5316.

Court of Customs and Patent Appeals.
June 17, 1947.

Pennie, Edmonds, Morton & Barrows, of New York City (S. Howell Brown, Jr., of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Acting Presiding Judge.

Claims 1 to 6, inclusive, of appellant's application for a patent on methods of producing metal hypochlorites were rejected by the Primary Examiner of the United States Patent Office and the examiner's rejection was affirmed by the Board of Appeals. Appellant has here appealed from the decision of the board.

The application describes a process of producing hypochlorites of metals, specifically calcium. The process consists essentially of reacting an alkyl hypochlorite, which may be tertiary butyl hypochlorite, with a mixture of water and a basic material such as slaked lime.

Claims 1 and 6 are regarded as illustrative and read:

"1. In the process of producing metal hypochlorites by reacting an alkali or alkaline earth metal basic material with an alkyl hypochlorite, the improvement comprising intimately admixing the basic material with water in proportions by weight within the

range of about 1 to 4 parts of water per part of the basic material and thereafter admixing with the base-water mixture an amount of alkyl hypochlorite in excess of that required to react with the basic material to form the neutral metal hypochlorite."

"6. In the process of producing calcium hypochlorite by reacting lime with tertiary butyl hypochlorite, the improvement comprising admixing with the lime to form a slurry an amount of water sufficient only to result in from approximately 22% to 55% of water in the product after separation of the alcohol formed by the reaction and thereafter admixing with the slurry an amount of tertiary butyl hypochlorite in excess of that required to react with the lime to form neutral calcium hypochlorite."

The essential feature of the invention, as is urged here by appellant, is in the order of procedure in mixing the ingredients. Appellant teaches mixing the lime substance with water before adding it to the main batch, that is to say, he makes a slurry before he makes his final mixture. He claims that improved results follow and that less water is required and therefore less moisture need be removed when the final product is prepared.

In rejecting the appealed claims the examiner cited six patents as follows:

MacMullin, 1,632,483, June 14, 1927.
MacMullin, 1,632,484, June 14, 1927.
MacMullin, 1,632,485, June 14, 1927.
Taylor et al., 1,481,039, Jan. 15, 1924.
Taylor et al., 1,481,040, Jan. 15, 1924.
Taylor et al., 1,609,328, Dec. 7, 1926.

However, it was the view of the examiner that the claims were not patentable over the MacMullin patent, 1,632,485, and he also called attention to a certain feature of MacMullin patent 1,632,483, so we need only consider the ground of rejection based upon these two patents.

The Board of Appeals did not reverse the ground of rejection based upon the MacMullin patents but did not approve the rejection on other grounds not necessary to state here. The board said:

"As to the amount of water present we find the situation to be somewhat indefinite both in respect to the disclosure in the patent and in this application. The patent states that the reaction is carried out with the alkyl hypochlorite in solution and with a chemically equivalent quantity of hydrated lime, that is, calcium hydroxide mixed with enough water to produce a 20% solution of calcium hypochlorite after the reaction with the alkyl hypochlorite. In connection with this point the Examiner refers to patent 1,632,483 and points out that at the time of reacting the hydrated lime or calcium hydroxide with the alkyl hypochlorite water is present in such quantities as is necessary to maintain the alkyl hypochlorite saturated during the reaction. In that case a slurry results which apparently indicates that an excessive amount of water is not present.

"Upon consideration of this feature of contention it is our view that adjustment of water present during the reaction is purely and only an elementary matter of choice within the usual skill of a chemist carrying out a reaction. It is a feature that would be easily determined by a few simple tests. It is obvious on the one hand that there should be sufficient water to keep the materials in solution or at least in suspension and on the other that an excess of water would be merely useless and add expense to practice of the process by necessitating final removal. We see nothing inventive in this feature of the method.

"The second point of contention is whether the lime is pre-slaked and in association with just enough water to make a slurry."

The board then discussed some rather technical chemical facts concerning the reaction of lime substances with water and concluded:

"The patent states that the lime is added as calcium hydroxide. This shows that it is slaked lime and we believe that it is entirely a matter of choice whether it be added as dry powder, suspended in a quantity of water merely to make a slurry or in more water to make a thinner mixture, without producing any difference in principle of the action involved. The affidavits of record relating to this feature have been considered without influencing our view in this respect. We accordingly see nothing

inventive in adding the calcium hydroxide of the references in the form of a slurry. This, like the question of total amount of water present, is merely a matter of choice and obviously only a matter of not using more water than necessary, thus avoiding expense of removing the excess. No difference in the reaction of the ingredients seems apparent. This ground of rejection is affirmed."

It is the position of the Solicitor for the Patent Office in this court that the decision of the examiner holding that in view of the disclosure of the MacMullin patent, 1,632,-485, the claims upon appeal do not involve invention. He further argues that if the said patent does not disclose the steps of the appealed claims or the order of the steps the board's opinion is correct in holding that to do what appellant has done would be the obvious thing and therefore not inventive.

We agree with the conclusions of both the examiner and the board. We think the MacMullin patent, 1,632,485, teaches the order of the steps that appellant teaches; that is to say, MacMullin contemplated mixing his lime and water before he mixed it with the other ingredient. In this patent we find the following statement, which is repeated in exactly the same language in two different places in the specification:

"A chemically equivalent quantity of hydrated lime and enough water to produce a 20% solution of calcium hypochlorite is then mixed with the separated amyl hypochlorite."

This would indicate that MacMullin mixed his hydrated lime and his water before he mixed them with the other ingredient. He refers to his first mixture in the singular and states, "*is* then mixed with the separated amyl hypochlorite."

But even if the examiner was wrong in this, we feel certain the board was correct in its conclusion that premixing the lime and water before adding it to the batch does not constitute an inventive act. It is the commonest of expedients to mix certain ingredients together before they are mixed into the main article to be produced. This is so well known and so well under-stood in many arts as to require no extended discussion.

The affidavits filed by appellant, as was stated by the board, and for the reasons stated by it, are not persuasive that the conclusion of the tribunals below was erroneous. We agree with the contentions of the solicitor supporting the finding of the board that the final mixed product could be made by pursuing four different steps: (a) Lime mixed with water first and then the slurry mixed with hypochlorite (this is the method of the application); (b) lime and hypochlorite first mixed together and then mixed with water; (c) water and hypochlorite first mixed together and then mixed with lime; (d) all three ingredients mixed simultaneously.

Anyone making this mixture would follow one of the four steps and it would be merely a matter of choice, and we think it is within the skill of the art to adopt such procedure as is found most satisfactory.

We are not impressed with the Robson affidavit in its attempt to show criticality in the results obtained by pursuing the various steps above outlined in (a), (b) and (c), since the affidavit shows that the lime content in the first instance was 1.91%, in the second, 4.77%, and in the third, 7.00%. It can hardly be said that this shows that the lime content was critical.

As to the amount of water used, as set out in some of the claims, we feel certain that this could not in itself amount to invention. Appellant, in his brief, states, "The amount of water added is subject to some variation." In fact, the amount of water specified in claims 1 and 2 shows that the exact amount is not critical.

Moreover, appellant's brief states that the amount of water was "dictated by practical considerations." This is obviously true. It is true in mixing liquids in making dough for baking purposes. The skilled baker uses just the amount of water that he thinks necessary to give the material the proper degree of moisture and workability.

There is nothing in the instant record which indicates that the particular order of steps produces results differing in any way

486

from those which would be brought about if another order of steps were followed.

The decision of the Board of Appeals affirming the decision of the examiner is affirmed.

Affirmed.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.